Bluegreen Vacations Corporation, 22-12217, and Ms. Bennett, I see that you have reserved five minutes for rebuttal. May it please the Court, Jennifer Bennett on behalf of the Louis's. American courts and English courts before them have been hearing cases just like this one for hundreds of years. Bluegreen believes the Louis's owed and continue to owe the company money under its contract. The Louis's believe they didn't and don't have any obligation to pay because that contract is void. That's the kind of run-of-the-mill contract dispute that courts have been hearing forever. And with good reason. It's hard to imagine a more concrete injury than having to pay money you don't owe. And a dispute about whether a purported contract actually imposes any valid obligations on the parties is certainly, to put it in the words of TransUnion, a real controversy with real impact on real people. Now Bluegreen argues that the Louis's lack standing anyway because the reasons the company's contract is void did not themselves harm the Louis's. But that's an argument that the Supreme Court has repeatedly rejected including most recently in Collins v. Yellen. And that case is almost identical on this score to this one. So in that case the plaintiffs came into court and they said there's an agreement it's costing us money and we think it's void ab initio. And the reason they thought that agreement was void was because the agency that had negotiated the statute that gave that agency power limited the president's removal power over the director of the agency. And they said because of this limitation on removal power any action that the agency enters is void ab initio and so this agreement is void. Is it your position that any violation of the MLA no matter how small or technical automatically renders a contract void? It is and I think that's the language of the Military Lending Act. The Military Lending Act says that any prohibition in the statute, any contract prohibited under the statute is void from the exception of such contract. And the reason that Congress did that is it had a lot of evidence from the Department of Defense. It asked them investigate these contracts. Why are we service members losing their security clearances to predatory lending? Investigate these contracts. And what DOD did is it went out and investigated the contracts and identified several features of contracts that these kinds of, several features that these kinds of contracts that were harming service members and harming the military had. And so it makes perfect sense that Congress would say, okay, these are the features of contracts that ordinarily are harming service members so we're going to make these contracts void. I understand about the injury in fact, I'm with you on that. There seems to be an injury here and it's not a statutory injury, it's just an actual injury. I'm telling you, I'm having a harder time with the traceability part. So I've read the complaint multiple times now. Show me where there's an allegation that the injury is traceable, the injury being payment, because that's the injury. I paid and I shouldn't have paid because it's a void contract. Is traceable to the violation here, the illegal conduct, because that's what the requirement is. Sure. So. I have the amended complaint in front of me. Feel free to read from it or show me where. Sure. So paragraph 12 of the complaint, for example, says plaintiffs have standing because they suffered a concrete injury and that they are obligated to pay under the terms of an agreement that is void from exception because it violated the MLA and also because they made a substantial down payment. In other words. But not, but that's not, that's not related to the conduct. In other words, they didn't pay the substantial down payment, which I agree is an injury because of the violations of the act, right? They, they paid because a blue green enforced a void contract. Well, but that's not the violation. That's the result. I understand. That's the consequence. But the traceability standard as I, and I can read the case law to you, but I don't think I have to, requires a link, some, some causal connection between the injury here, the payment on a void contract, the Barclays credit card payment they made for the down payment. And the violation here, as I understand the three that are out there, failure to give oral considerations, failure to tell them orally about it, misrepresenting the MARP and the arbitration clause. No, I actually, I disagree with that. And I think Collins, the Supreme Court's decision in Collins makes clear that there is no necessary link between the, the injury and the violation. I think they didn't, they didn't absolve, I'm not sure they addressed that issue. They didn't absolve you from doing traceability. Just the issue there was injury. And they said that payment on a void contract, or in that case, a void requirement is, is a, is, is a standing or is an injury. And I agree with that. So in Collins, actually, they did address traceability explicitly. So there in some of the lower court judges has said, had said, there's no standing and there's no standing because of traceability. And the traceability argument in Collins is look, the legal violation is an unlawful limitation on the president's removal power. That's a legal violation. And the, the judges who thought there wasn't standing said, none of this harm is traceable to the legal violation. The harm is payment on a contract that you're saying is void. And the Supreme Court explicitly rejected that argument. And so if, if the argument that it had to be traced. Well, that was because payment was made in, that's because payment was made based on the misunderstanding that the president had the power to do that. In other words, what was the violation? And it was, there has to be a connection between the violation, not the voidness. Voidness is a consequence. It's a remedy for you. That's not the, that's not the, the, the legal conduct. The legal conduct is this contract didn't tell people the MARP. They weren't provided with oral, oral warnings. And there was an arbitration clause. Where's the allegation here that there's a connection between the payment and those things? Your Honor, I think there, I, I agree there's not necessarily an allegation of a direct connection but. I, I agree with, you and I are on the same page with this. So, so, but two answers to that. One is, you know, traceability is, is a, does not require proximate causation. The question is how do you get around that? Sure. So there are two answers to that question. How do you get around it? Yeah. So the, one is traceability doesn't require proximate causation. And I agree with you. You know, in Wilding, for example, there just needs to be some connection. I agree with you. So, so to the extent that, that you, you're, you think that there needs to be some connection to the legal violation, here the legal violations are what rendered the contract void. It's why the, the, the, um, the Lewis's don't owe the money that they've been obligated to pay. Your argument is if there's a violation, it doesn't matter. It's automatically void. That's correct. Exactly right. So the statute says it's automatically void. The plaintiff could be delighted with the agreement. It's still void. That's right. Although you'll note that the plaintiff then would not have presumed. They have the arbitration provision and the interest provision. That's the end of it. That's right. That's because that's exactly what Congress said substantively. And I'll note that that plaintiff who's delighted with the agreement wouldn't have standing to come into court because then that plaintiff presumably wouldn't have, have any injury or say the Lewis's signed the contract. Your argument is that the fact that the contract is avoidable in theory, grant standing. The argument is that the fact that the Lewis's have paid money and continue to be obligated to pay money on a contract that is void, that has no obligations, grant standing. I'll note that this claim has a long history in, in American courts and in English courts before them. For example, the Knowlton case, which is an 1880 case from the Supreme Court is almost identical to this case there. What happened is somebody entered into an agreement to buy stock and didn't fulfill all the payments on that agreement. So the company kept the payments, didn't get his stock. And he said, hey, I want my payments back. And so he went into court and said, actually, this stock agreement is illegal. And it was illegal for a basically procedural reason. It was illegal because the stock certificate didn't reflect the actual price he had paid. And the court granted rescission of the contract and restitution. And in fact, that case is much more difficult than this case because there the plaintiff actually benefited from the statutory violation. He got a stock certificate that said the stock is worth more than he paid. It's hard for us to look at, at pre-Lujan law unless the court explicitly dealt with standing, the Supreme Court explicitly dealt with standing, which it didn't in the case you're talking about. Sorry. That's right. Although I'll note that Spokio and TransUnion, one of the things they say is we look and see if there's a long tradition of hearing these kinds of cases. That's where we started, which is you don't want to be in Spokio and TransUnion land because this is not an intangible injury case. This is a tangible injury case. Those cases really aren't applicable here in my view. I think the magistrate judge in the district court might have sort of been a little off key by looking at those cases and not what you're talking about, which is we paid money and we paid money on a void contract and you're injured by that. That's right. But that's why I come back to the traceability issue and I don't want to belabor that. But you don't dispute that the arbitration provision is not being enforced. There's no indication that it's going to be, right? That's right. But again, it doesn't under- And I understand your position on that. Yes, sure. That's just my simple question. And you would also agree that even though you have alleged that the necessary disclosures weren't made, you don't dispute that the purchase terms accurately describe the monthly payment, right? There's no allegation that your clients were paying too much money. That's correct. Although on note, if you look at the ... There are several requirements. There's a written disclosure requirement in the statute. There's also an oral disclosure requirement in the statute. And there's no dispute, I think, that they were not any oral disclosures. What I'm trying to get at is they weren't paying too much money under the MLA. You're not suggesting that. I think that's correct, yes. I see that my time has expired, so ... You have five minutes for ... Thank you. Thank you. Mr. Cooper? And you're here on behalf of an amicus, the Consumer Financial Fund, is that right? Yes, Your Honor. And you've got five minutes. May it please the Court, Ryan Cooper here today on behalf of the Consumer Financial Protection Bureau participating in this case as amicus. Congress passed the Military Lending Act to protect American military families from predatory lending. Congress understood that American service members and their families are uniquely vulnerable to abusive financial practices, and Congress knew that protecting American service members was necessary to ensure the morale and operational readiness of our armed services and to safeguard our national defense. So Congress acted, and it used strong medicine. The Military Lending Act prohibits extending certain loans to service members and their families, and if a creditor nonetheless extends a prohibited loan, that loan is void from its inception. Lewis has alleged that the loan they were issued violates the Military Lending Act. They seek to rescind the loan, to unwind the transaction, and to get their money back. You could file a suit or a claim to have the contract declared void for the two reasons alleged in this case, couldn't you? In theory. Yes, Your Honor. In theory, you could file a declaratory judgment action to have the contract declared void on the ground that there were two violations, and the Court would determine whether or not a pure violation in regards of any injury, the contract's void. Your Honor, I think that's exactly what has happened here. The plaintiffs have filed a lawsuit, and they're asking for a judicial- This is a lawsuit for declaratory relief, declaring that the contract is void? I think that is part of the relief that the plaintiffs have requested, but they've certainly also requested restitution and rescission, which are retrospective remedies, and- And they claim to have the contract declared void. I believe, and I will defer to appellants on this, but I believe there was a request in the complaint for a declaration, but I think the- That the contract was void. Void ab initio under the Military Lending Act, but I think the core point here is they're seeking an adjudication of the validity and enforceability of the contract, and whether the particular remedy that they're seeking is restitution or rescission, or whether it's a declaratory judgment, they are entitled, in our view, to an adjudication to their claims on the merits. And I did want to- Mr. Cooper, let me ask you a question, and I should have said CFPB at the beginning, but the CFPB is not taking a position on whether this agreement falls within the residential mortgage exception to the MLA, right? No, you're correct, Your Honor. We've not taken a position on that argument, which was, you know, raised after we filed our brief as an alternative grounds for affirmance. But I would, you know, simply note that it's a, at least potentially fact-bound issue, and one that hasn't been reached by the district court, so there are potentially reasons why this court might want to allow the lower courts to resolve that issue in the first instance. The reason that we're here as amicus is that we believe that we have an interest in ensuring robust private enforcement of the Military Lending Act, and we believe that the lower courts' decision would limit that enforcement. How is the requirement that you allege in one sentence, I signed this agreement because I was duped and not given my oral warnings, not told my MARP, and not, and required to sign an arbitration agreement? How is that onerous on anybody? How is that, the rise and fall of the Republic and all, and all our armed services will rise and fall without, with requiring that allegation? Well, yes, Your Honor, a few points. First, I think it actually does read an atextual materiality requirement into the statute that would make private enforcement. Not the statute, it's Article 3. I agree with you on the statute, you're right, but they've, let me be clear, I think they've all probably alleged, I don't know about the legal issues, but they've alleged what they need to allege statutorily. My point is simply, Article 3 has independent obligations to that, and we should all want to do that, including the U.S. government. Well, Your Honor, I would point you to this court's decision in Hallam's, which I think is nearly identical to this case. Tom, as Hallam's dealt with, and it's, there's a lot in Hallam's that overlaps, but Hallam's dealt with the injury in fact requirement, and I'm with you on injury in fact, but show me where in Hallam's it dealt with the traceability issue that we have here, which is a non-explicit allegation, nothing in the complaint that suggests that they wouldn't have done this but for the violations of the statute. Well, in Hallam's, the defendants argued that you still would have bought this insurance because it satisfied the requirements of your lessor, so you still would have bought this policy even if you had known that it was not an enforceable policy, and what the court said was payment of consideration on an invalid or illegal contract is sufficient for Article 3. That's this court's precedent. I think they said it's an injury in fact. I don't know that they said that that alone met all three requirements of Article 3, but maybe I'm wrong. I have it in front of me. Show me where. Well, Your Honor, they found standing, and they heard the case, and they proceeded to the merits, and I see my time is up, but we think that that's how this case should be resolved as well. Thank you. Ms. Mead, you have 20 minutes. Thank you. May it please the court, Grace Mead and Joseph Bonnerati from Stern, Sweever, Miller on behalf of Blue Green Vacations Unlimited, Inc., the comprehensiveness and undisputed accuracy of Blue Green's disclosures eliminates both Article 3 standing and every policy concern we heard articulated here and in the brief. The problem with that argument with regard to, you may be right on the merits completely, but with regard to Article 3 standing is we don't, at the complaint stage, delve into the merits. In other words, you may be right in your reading of the statute, but I think for right now we take the allegation that the agreement is void, even if ultimately on the merits we would disagree with, agree with you and disagree with your opposing counsel. On causation or injury in fact? All of it. I understand. Let's start with causation. I mean, I'll read to you the law, which seems to suggest that in Article 3, when it comes to standing generally, we do not delve into the merits of the claim. You do delve into what is incorporated by reference in the complaint, which was affirmatively alleged in the complaint to be integral to their claim, and also which was the subject and object of the complaint, and no one's disputed you consider all of those disclosures. I'll just, sorry, sorry to interrupt, but I'll read to you from West Virginia versus U.S. Department of Treasury, only because I was on the panel in that case. When we assess standing, we must be careful not to decide questions on the merits for or against the plaintiff, and must therefore assume that on the merits, the plaintiff would be successful in their claims. Okay, but on the issue of causation, for example, there is no allegation, as you noted, that they bought because of what was said or not said. In addition, the deposition testimony foreclosed that. And beyond that, we heard a reference to Collins v. Yellen. But in Collins v. Yellen, the Supreme Court ruled, quote, for purposes of traceability, the relevant inquiry is whether the plaintiff's injury can be traced to the allegedly unlawful conduct of the defendant, not the provision of the law that is challenged. And that was a challenge to the appointments clause issue there, where the agency had essentially eliminated massive shareholder value in the wakes of the failure at Fannie Mae and Freddie Mac. Walters v. Fast Air Conditioning from this court makes very clear we have held traceability to be lacking if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct. That allegation is nowhere in the complaint. Had I been told something different, something required by the MLA, I would not have bought. That is foreclosed by Mr. Lewie's deposition. I'm not sure that's required at the pleading stage. Walters, for example, is a summary judgment case, and the burden tends to be a little bit higher at that point. But I will say, and I think your opposing counsel agreed, there is not any direct allegation that but for or I signed this agreement because it required me to arbitrate or I signed it because, or I wouldn't have signed it if this didn't happen. There's nothing like that. There's no connection there. There's nothing in the ballpark. But what they do say is the voidness is what's relevant here, and the voidness is part and parcel of the violation, and they have paid on a contract that is void, and that is the causal link. Well, what's interesting is I heard agreement from everyone, voidness, rescission, and restitution are remedies, not causes of action. And even the agency, Amici, conceived that the first step in a standing inquiry is to define the scope of the challenged conduct in reference to the specific common law, statutory, or constitutional claims that a party presents. That's at page 17 of their brief. And they're right. For example, the Knowlton case, even Pruitt-Lujan, give them the benefit of that, involved an action that violated the stock certificate. OK? So there was a cause of action, not just a remedy. And this court addressed voidness in United States v. Mortgage Investors Corporation. And there it held that simply because a statute does not use the remedy of damages and instead says it's possible that this is voidable, that does not change the outcome or the analysis. Just as the Fifth Circuit did in the Wendt case. So the question here, I think. I'm not sure when it's consistent with Hallam's and Walters, but. Well, Hallam's is very easily distinguished because it involved a claim by plaintiffs that the coverage was altogether illusory. There was no coverage, zero coverage. And this court held there is standing because it does not resolve the merits. And then it went on to rule for the insurer on the merits, saying there's a species of derivative liability for which this policy will provide coverage. But there's nothing to suggest in any of the cases they've cited that rescission or restitution standing alone were a basis for Article III jurisdiction. It's always breach of contract. As Judge Choklat pointed out here, here we do not even have a declaratory judgment action. Now, the undisclosed. They did seek a declaration. You agree they sought a declaration, though, to void the contract. In the request for relief, they sought to void the contract. They did not assert a separate claim for declaratory judgment. And so you don't have to wrestle with the franchise tax board question of whether that could create jurisdiction in a federal court, which is a very thorny question. Look, the causation also need be considered in light of what's conceded and known about the disclosure. So as the panel established, total estimated monthly payment of $179.81. The interest rate correctly disclosed. It's the omission of the letter M, as in Mary, about which they complain. As the magistrate found, all pertinent numbers were disclosed. As the magistrate found, plaintiffs do not claim that the alleged miscalculation of the MAPR, since abandoned, led to them having to pay anything extra or different. They do not allege it had any bearing on their decision to accept the contract. In addition, in paragraph 22 of the complaint, which we accidentally cited as paragraph 21, they conceded under the MLA itself, you do not need to calculate the MAPR. You only have to calculate all pertinent numbers. And I do think that then Trischel and TransUnion become quite relevant, because fundamentally this case is about a failure to disclose information in the wrong format. And that is precisely what the United States Supreme Court dealt with in TransUnion. Now there, the statute said, you can get damages. Here, the statute says void. Those words are remedies, though. There's not a common law comparator, and that's a comparison they invite. And they invite it despite their supposed tangible injuries. But their tangible injuries are not injuries at all. They don't allege they didn't get what they contracted for. They stayed at a blue-green resort twice, according to the deposition they cite. They didn't go very far with it. They also said, Mr. Luis says, I never paid more than $179.81 a month. Now all of that is also relevant to these policy arguments. So the military amici identify six core protections of the MLA, and that's taken from a Department of Defense report. The first is an annual percentage rate limit of 36%, a usury provision. Not violated here, can continue to be enforced. Two is disclosure of an annual percentage rate and payment obligations. Done here. Three prohibits using a personal check or a military allotment as security for the loan, a payday loan. Four, requires states to apply consumer protections to non-resident state members. That was complied with. Five, prohibits a lender from requiring arbitration. But as for arbitration, this court's decision in Bowen is dispositive. We never sought to enforce arbitration. No intent of doing so ever. And in Bowen, under the Truth in Lending Act, this court confronted precisely the same situation. And said there is no standing. Beyond that, the MLA itself again recognizes that the substance of the disclosure, not its form, is what matters. That again was conceded in the first amended complaint, DE 16, paragraph 22. The amici also cite enforcement actions that would not at all be affected by the district court's ruling here. So they say, the data is compelling that the MLA has decreased the number of active duty service members who need to get out of trouble with payday loans by approximately 99.8%. Great. It's done that because it's a ban on usury. And because beyond that, it says you can't use your check, your allotment as security. They cite enforcement actions. For example, the fast cash case. That's against pawn lenders charging APRs over 200%. They cite an enforcement action against a jewelry lender up in the Eastern District of New York. And in that case, the alleged disclosure violation was you didn't provide disclosures under the Truth in Lending Act. That everyone concedes were provided here. Now, this is a criminal statute for knowing violations. And no one suggests that anyone before these private plaintiff law firms ever tried to enforce the MLA against a timeshare company that made voluminous, accurate disclosures. And we cited the principle of longstanding inaction is important. But the Supreme Court said it even better in Christopher B. Smith Klein, 567 US 142, 2012. Whereas here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute. As the Seventh Circuit has noted, while it may be possible for an entire industry to be in violation of the FSA for a long time without the Labor Department noticing, the more plausible hypothesis is that the department did not think the industry's practice was unlawful. Finally, an article cited by the military amici says the same article that cites the victory over payday lending says, unfortunately, CFPB has stopped supervising payday lenders for compliance with the MLA. Now, they trot out this parade of horribles. Again, they suggest for want of the letter M, our military might be lost. And it is not our place to second guess those policy decisions, these broader policy concerns. But as was said in Trischel, against that backdrop, no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies. And whether there is a case or controversy here must be judged on the individual completing and the deposition testimony they have interjected into this appeal. How is that the case? Best as I read, the magistrate judge's R&R and the district court's order, this was a facial attack, a facial standing attack, under 12b1, done based solely on the allegations of the complaint. Correct. And it is typical, it would be . . . We can't look outside of that, can we? You need not, and you should not? I'm not sure that we can. There's an 11th circuit . . . I guess theoretically I can do whatever I want, but those of us who care about the law . . . There's an 11th circuit case cited in the brief that says typically you do not, but you can, and that precedes our discussion. It turns it into a factual attack, and at that point we don't have a full record here. We have some depositions that have been done partially, and that would seem that we'd send that back to the district court to do a limited discovery on jurisdiction so that it could then inform us of the facts. Well . . . I don't think you want that, do you? No, we do not want that, and I do not think the court need go there. I agree. Beyond that, we heard this interesting statement that a delighted plaintiff here would have no injury. That seems to me inconsistent with the principle that the word void as a statutory remedy is sufficient to confer standing. It is neither sufficient to create an injury in fact, and nor here do we have causation. This is not Hallam's. Hallam's is in fact an important case to be sure we're consistent with because it was decided in 2019, long after Lujan, after Spokio, after Muransky, after many of these decisions, not Truschell, and before Muransky, actually, according to my list. But in Hallam's, the plaintiffs argued the policy was illusory. Zero coverage. It's not what we have here. They cannot even articulate . . . Why? Why is that not the case? In other words, again, if on standing we assume that they're right on the merits, and I think that is what we're required to do, then the agreement is void, and then it would be illusory. How is it not exactly the same for injury purposes? It is not exactly the same because an injury in law is not an injury in fact. And whether the statute uses the word damages for remedy or the word void or voidable for remedy, neither can independently confer jurisdiction. And this court recognized as much. In United States Fee Mortgage Investors Corporation, 987F1340, 11th Circuit, 2021. There, it was a question of relators standing under a Georgia fraudulent transfer statute. What about London? What about London? It's 2003. It's the first issue with London. The second issue . . . Cases don't expire because they're older than some of the people in this room. Well no, they're older than Spokio would be the operative point. So Justice Scalia was right in Lujan, the rest of the world took some time to fully appreciate it. I get that, and it may be that it has been abrogated by there, but no one has said that, and right now it's a live case, and Spokio and TransUnion didn't deal with the Truth in Lending Act. So why on its face does it not deal with this exact issue? In other words, it's a contract that violated TILA, and no, am I wrong? No, it was an insurance dispute, I believe, and the issue was they'd not gotten requisite approval from the Florida Department of Insurance, nor made some disclosures that are not spelled out with particularity, and the court relied on Florida precedent, including a Florida Supreme Court decision involving the unauthorized practice of law to hold that Florida courts had held that not a penny could be paid if the policy was not approved by the Department of Insurance. I think that case is best limited narrowly to the background Florida law that existed at that time in 2003, and I think doing so makes it consistent with the post-Spokio line of cases. Yeah, but Collins includes the post-Spokio line of cases. It does, it does, but Collins, again, involved a challenge where the shareholders were gonna have essentially all the value wiped out by practical acts of an agency with a non-constitutional head, according to the plaintiffs. The acts were void because they were outside the agency's authority, right? Right, but the wrongful act was the violation of the Constitutional Appointments Clause at the very tippy-top of the agency that had issued these regulations in the wake of the financial crisis. Unless the panel has further questions, thank you. Thank you. Ms. Bennett, you've reserved five minutes. Thank you. I have three points that I'm gonna try to make. The first is an answer to Judge Choflat's question about whether you could bring a case without having any injury. You could just always bring a Declaratory Judgment Act case. You could bring a declaratory action to rescind the transaction on the ground of fraud in the inducement, for example, by misrepresentations or whatever the case may be. And you could also throw an account that argues that if there is a technical violation like the arbitration thing, it's void as a matter of law. You could, I can imagine two counts in a complaint brought in a case like this. But that's not this case. Right, Your Honor. I just, I wanna address the idea that, and maybe I'm misunderstanding, which is the idea, we're not claiming that voidness creates injury in and of itself. So for example, if what happened is the Lewises signed the contract, ran out of the office, never provided any money on the loan, Blue Green never came after them and went defunct, there's no chance that the Lewises would ever have to pay money on this contract. The Lewises never paid money on this contract. I don't think there would be articles standing in that case. There'd be no injury. So it's not the voidness that's creating the injury. What's creating the injury is that the Lewises paid money to Blue Green and that Blue Green collected that money from the Lewises and continues to believe that the Lewises are obligated. So I just wanna make that clear. And relatedly, the second point is, I don't think this is just a remedy. So this is Congress changing substantive contract law. What Congress is saying is, certain kinds of contracts with service members are invalid, they are void. And I think one way to think about it, one way to see that is, assume we- Do you know the heading of- I do realize that- Oh, let me ask the question because you know I'm going there, which is at 10 USC, section 987, subsection F. Tell me what the title of that is. I realize the heading of that section is penalties and remedies, and it's not the case that it's- That's a hard argument for you to make, that voidness is not a remedy. It's not just a remedy. And I think one way to think about it is this. Imagine the parties are reversed. So imagine that the Lewises run out of the office, they don't make a payment, and Blue Green comes in here and sues the Lewises to pay on the contract. The Lewises could certainly, I don't think there's any dispute that the Lewises could raise a defense that the Military Lending Act avoids that contract. That's the remedy, that's not the cause of action. The cause of action would be they violated MLA, and the remedy would be that. You get to the same place. I understand what you're trying to do, but it is, I don't see any doubt that this is a remedy. I know why you want to avoid that because you want to avoid the traceability problem. I just, I don't think it matters really what we call it. I'm not invested in not calling it a remedy, but I think it is useful to think about what would happen if the situations were reversed. Because there's no dispute then, I think, that the Lewises could come in and say, I have a defense, the Military Lending Act avoids this contract. State court probably, in a foreclosure action or something of the sort. Potentially, but imagine- But we don't have that case, that's the problem. Sure, but the question is, is this case different? So the injury in that case is- You want us to turn it around and assume that that's the other case? Well, so the question is, is this case different? Because the only way it's different is that the Blue-Green didn't have to go to court. Blue-Green instead was able to collect the money without a lawsuit, but the injury and the traceability is still the same. They still didn't, and so essentially, the contract law is the same, the injury is the same. And so the question is, can you come into court when somebody took money from you without having to bring a lawsuit, without having to assert the defense, or can you only assert the defense of substantive contract law if somebody brought a lawsuit? And that can't be right. I also just want to try one more time to convince you on traceability. So Collins, for example, I'm just gonna quote from Collins. The shareholders could not trace their injury to the violation of the Recovery Act's removal restriction. They could not trace their injury to the violation of the Constitution. And then Collins cites Lujan, and Lujan, and what it cites Lujan for is the proposition that the injury has to be fairly traceable to the defendant's conduct, not why that conduct is illegal. And that goes all the way back to Duke Power, where again, the court said, we do not demand a nexus between the right asserted and the injury alleged. We cannot accept the contention that a litigant must demonstrate more than an injury in fact traceable to the defendant's conduct that's redressable. All of that is true here. The Lewis's were injured. They paid money on a void contract. It's traceable to Blue Green's conduct. I don't think there's any dispute about that. And it's redressable. We're asking the court to rescind the contract and to give them their money back. I see my time has expired. Thank you. Thank you all. We have the case under advisement. Thank you. Thank you. And our third and final.